UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CHRISTINE LEWIS, et al., | : | |
| | : | |
| Plaintiffs, | : | Case No. 3:22-cv-141 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| OLD SOUL'S FARMS, LLC, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| Defendant. | : | |
| | : | |

---

**ENTRY AND ORDER DENYING, WITHOUT PREJUDICE, JOINT MOTION FOR APPROVAL OF PARTIES' SETTLEMENT AGREEMENT (DOC. NO. 17)**

---

Before the Court is the Parties' Joint Motion for Approval of Parties' Settlement Agreement (the "Motion"). (Doc. No. 17.) Plaintiffs Christine Lewis, Phillip Lewis, and Camden Lewis (collectively, "Plaintiffs") brought this action against Defendant Old Soul's Farms, LLC ("Defendant") alleging violations of the FLSA and Ohio state law. (Doc. No. 1.) Specifically, Plaintiffs alleged that Defendant committed violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.03, and the Ohio Prompt Pay Act, Ohio Rev. Code § 4113.15.[1] (*See* Doc. Nos. 1 and 15.) Despite Plaintiffs filing this case as a class and collective action under Fed. R. Civ. P. 23 and the FLSA, the Parties have elected to dispose of this action through settlement of Plaintiffs' individual claims. (Doc. No. 17 at PageID 126.) In the Motion, the Parties move the Court to approve the proposed

---

[1] In the original Complaint, Christine Lewis brought an individual claim for workers compensation retaliation pursuant to Ohio Rev. Code § 4123.90. (Doc. No. 1 at PageID 2.) However, the Court granted Plaintiffs leave to file an Amended Complaint (Doc. No. 14) and Christine Lewis voluntarily dismissed her individual claim for retaliation in violation of Ohio Rev. Code § 4123.90. (Doc. No. 15.)

written settlement agreement (the "Proposed Settlement") attached to the Motion (Doc. No. 17-1). (Doc. No. 17 at PageID 116.)

For the reasons discussed herein, the Court **DENIES** the Motion **WITHOUT PREJUDICE**.

### I. BACKGROUND

On May 25, 2022, Plaintiffs, on behalf of themselves and all others similarly situated, filed their Class and Collective Action Complaint against Defendant. (Doc. No. 1.) Plaintiffs, likewise on behalf of themselves and all others similarly situated, subsequently filed their Amended Class and Collective Action Complaint (the "Amended Complaint") against Defendant. (Doc. No. 15.) In sum, Plaintiffs allege that Defendant denied its hourly employees uninterrupted meal breaks during shifts but "deducted one to two 20-minute breaks from the daily hours worked by" Plaintiffs and other hourly employees nonetheless. (Doc. No. 15 at PageID 90.) As a result, Plaintiffs allegedly worked more than forty hours per week and Defendant failed to compensate them accordingly. (*Id.*) Defendant filed an Answer in response to the Amended Complaint, denying these allegations, asserting several affirmative defenses, and maintaining that Plaintiffs and the individuals they purported to represent were properly compensated at all times. (Doc. No. 16.)

Despite instituting this action purportedly on behalf of themselves and all others similarly situated, Plaintiffs never moved for conditional certification of the alleged class or for court-facilitated notice to other similarly situated employees. On March 24, 2023, Plaintiffs indicated in Plaintiffs' Unopposed Second Motion to Extend the Cut-Off Date for Filing Motion for Conditional Certification that the Parties had engaged in discovery, settlement discussions, and mediation. (Doc. No. 11 at PageID 57-58.) After several telephone conferences with the Parties, the Court issued a notation order requiring Plaintiffs to submit their motion for court-facilitated

2

notice to Defendant's other employees who might be similarly situated by September 8, 2023. No such motion was filed by September 8, 2023, and on September 26, 2023, the Court issued another notation order directing Plaintiffs to file a status report explaining this failure no later than October 6, 2023.

On October 2, 2023, the Parties filed the instant Motion proposing settlement of Plaintiffs' individual claims under the FLSA and Ohio state law. (Doc. No. 17.) The Proposed Settlement stipulates that Defendant will, without admission of liability, pay a sum of $36, 219.00 to Plaintiffs and their attorneys as follows: Christine Lewis will receive one payment of $2,500.00 representing back wages and one payment of $2,500.00 representing liquidated damages; Phillip Lewis will receive one payment of $2,500.00 representing back wages and one payment of $2,500.00 representing liquidated damages; Camden Lewis will receive one payment of $2,500.00 representing back wages and one payment of $2,500.00 representing liquidated damages; and Gibson Law, LLC, Plaintiffs' counsel, will receive one payment of $21,219.00 representing attorneys' fees in the amount of $18,760.97 and litigation expenses in the amount of $2,458.03. (Doc. No. 17-1 at PageID 130-131.)

In return for these payments, the Proposed Settlement would require the following release from liability and mutual confidentiality:

> 4. Release. In consideration for the benefits set forth in this Agreement, Employees, for themselves and their dependents, heirs, beneficiaries, successors, assigns, executors, agents, administrators, and representatives of every kind, fully and forever waive, release, surrender, acquit, and discharge the Company, including its current and former directors, officers, administrators, owners, shareholders, agents, attorneys, employees, managers, supervisors, representatives, insurers, predecessors, divisions, parents, sister companies, affiliates, subsidiaries, successors, and assigns (collectively, the "Released Parties") from any and all of their rights, injuries, actions, demands, sums of money, liabilities, damages, losses, charges, complaints, causes of action, interests, claims and costs (including attorneys' fees) of any nature whatsoever, in law or in equity, whether known or unknown, disputed or undisputed, arising out of, under, or by reason of any matter

whatsoever from the beginning of time through and including the date that they execute this Agreement, including, without limitation, any claims or rights asserted or arising out of or in connection with Employees' employment by the Company and/or Employees' separation of employment and any claims, causes of action, allegations, or other rights associated with the Lawsuit, any claim of express or implied contract or promissory estoppel, wrongful termination, retaliation, harassment, discrimination, intentional infliction of emotional distress, or other common law torts, any violation of a specific safety requirement, or pursuant to any federal, state, or local employment laws, regulations, executive orders, or other requirements, including without limitation, any and all applicable Ohio employment laws, including but not limited to Chapters 4111, 4112, 4113, 4121, 4123, and 4141 of the Ohio Revised Code, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Family and Medical Leave Act of 1993, the Employment Retirement Income Security Act of 1974, the Rehabilitation Act of 1973, the Older Workers Benefit Protection Act, the Americans with Disabilities Act of 1990, the Civil Rights Act of 1991, and the Age Discrimination in Employment Act, as they may be amended (collectively, "Claims"). Employees further represent and warrant that they have not suffered any injuries during the course and scope of their employment at the Company and that they are not owed any wages, accrued vacation pay, commissions, or bonuses from the Company. The only exception to this Section is that Christine Lewis's workers' compensation claim, Bureau of Workers' Compensation Claim No. 21-195735, is not settled or closed as a result of this Agreement. In consideration of the benefits that Employees will receive under this Agreement, Employees hereby release, waive, and discharge any and all such Claims against the Released Parties, and Employees hereby agree that neither they nor any of their heirs or personal representatives will ever sue or assert in any forum any such Claims. Employees acknowledge that this Agreement includes terms and provisions setting forth certain benefits and/or rights to which they are not otherwise entitled. Employees acknowledge and agree that this release pertains to all Claims up to and including the date that they execute this Agreement.

5. Confidentiality. Except as described in Paragraph 10, Employees agree not to disclose, whether directly or indirectly, to any person (except their respective spouses, attorneys, or tax and financial advisors), organization, or agency the terms of this Agreement except as required by law. The Parties acknowledge that copies of this Agreement will be filed with the United States District Court for the Southern District of Ohio and with the Department of Labor and that third parties may discover this Agreement through Court or Department of Labor records; however Employees agree not to suggest or direct, whether directly or indirectly, any third party to obtain this Agreement through either the United States District Court for the Southern District of Ohio or from the Department of Labor. Without breach of this Agreement, Employees may state that they are "subject to a confidentiality agreement."

(Doc. No. 17-1 at PageID 131-132.)

Through the current Motion, the Parties ask the Court to approve the Proposed Settlement as "adequate, fair, and reasonable." (Doc. No. 17 at PageID 117.)

## II. LEGAL STANDARDS FOR ASSESSING A PROPOSED SETTLEMENT OF AN FLSA ACTION

The principal purpose of the FLSA is to protect all covered workers against "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being." 29 U.S.C. § 202(a). This includes protecting such workers "from substandard wages and oppressive working hours" so that each "receive[s] a fair day's pay for a fair day's work." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (internal quotation marks omitted). Further, "[t]he FLSA's overtime compensation provisions are 'mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified by contract or settlement.'" *O'Bryant v. ABC Phones of North Carolina, Inc.*, No. 2:19-cv-2378, 2020 U.S. Dist. LEXIS 138599, at *18, 2020 WL 4493157, at *6 (W.D. Tenn. Aug. 4, 2020) (quoting *Kritzer v. Safelife Sols., LLC*, No. 2:10-cv-729, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012)).

However, there are two narrow circumstances in which FLSA claims for back wages may be compromised. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. CV 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *11, 2008 WL 4724499, at *2-3 (E.D. Ky. Oct. 23, 2008). The first exception involves FLSA claims that are supervised by the Secretary of Labor pursuant to 29 U.S.C. § 216(c). *Lynn's Food Stores*, 679 F.2d at 1353. The second exception provides that "a stipulated judgment [may be] entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute

5

over FLSA provisions." *Id.* at 1355. "Although the Sixth Circuit has never definitively answered the question of whether court approval is required for FLSA settlement agreements, district courts in our Circuit regularly find that the FLSA context counsels in favor of courts approving settlements." *Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960, 964-65 (E.D. Mich. 2021) (collecting cases); *see also Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026 (8th Cir. 2019) (acknowledging a circuit split regarding whether Supreme Court precedent requires "judicial approval of *all* FLSA settlements") (emphasis in original).

Therefore, in reviewing a settlement proposed by the parties in a suit brought by employees under the FLSA against their employer, a district court must determine whether the proposed settlement represents a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*, 679 F.2d at 1355; *Athan*, 523 F. Supp. 3d at 965 ("[b]efore this Court can approve the settlement of Plaintiff's FLSA claim, the Court must determine that the parties were engaged in a bona fide dispute and that the settlement is a fair and reasonable compromise of the issues presented") (internal quotation marks omitted). When determining whether a proposed settlement is fair and reasonable, courts look to circumstantial factors – described in greater detail below – as well as any inclusion of a confidentiality provision and the reasonableness of proposed attorneys' fees. *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016) (totality of the circumstances); *Smith v. SAC Wireless, LLC*, No 20-10932, 2022 U.S. Dist. LEXIS 96760, at *5-6, 2022 WL 1744785, at *2 (E.D. Mich. May 31, 2022) (confidentiality and attorneys' fees). If found to be reasonable, then the court may approve the settlement to "promote the policy of encouraging settlement of litigation." *Crawford*, 2008 WL 4724499, at *9 (quoting *Lynn's Food Stores*, 679 F.2d at 1353).

### III. ANALYSIS

As stated above, the Motion asks the Court to approve the Proposed Settlement in its

entirety as adequate, fair, and reasonable. (Doc. No. 17 at PageID 117.) The Parties argue that the Proposed Settlement (1) will resolve bona fide disputes involving overtime compensation claims under the FLSA and Ohio state law, and (2) is fair and reasonable. (*Id.* at PageID 120.) To this end, the Parties further submit that the Court should approve the Proposed Settlement's confidentiality provision and find the attorneys' fees provided in the Proposed Settlement reasonable. (*Id.* at PageID 127-28.) The Court addresses each of these four points in turn.

### A. Bona Fide Dispute

"A bona fide dispute exists when there are legitimate questions about the existence and extent of [the] [d]efendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks omitted); *see also Lynn's Food Stores*, 679 F.2d at 1354 (there must be "issues, such as FLSA coverage or computation of back wages, that are actually in dispute"). In other words, there must be some doubt that the plaintiff-employee(s) would succeed on the merits through litigation of the FLSA claims. *Selk*, 159 F. Supp. 3d at 1172 (finding bona fide dispute, such that employees were "not clearly entitled to the compensation they seek," where the parties disputed whether the employer's practice of "rounding employees' work time to the nearest quarter hour" undercompensated the employees); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *14-20, 2008 WL 4724499, at *4 (finding bona fide disputes as to whether plaintiffs were exempt employees, whether plaintiffs would be entitled to liquidated damages, and concerning defendants' defenses against liability). This requirement safeguards against parties who would use settlement to circumvent the provisions of the FLSA. *Selk*, 159 F. Supp. 3d at 1172; *O'Bryant*, 2020 U.S. Dist. LEXIS 138599, at *19, 2020 WL 4493157, at *7 ("[a] proposed settlement resolves a bona fide dispute when it reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, rather than a mere waiver of statutory

rights brought about by an employer's overreaching") (internal quotation marks omitted and alterations adopted).

The Court finds that this case reflects a bona fide dispute between the Parties over potential liability under the FLSA. In particular, even in settlement, Defendant continues to dispute the merits of Plaintiffs' FLSA claim for overtime compensation and stipulates that the Proposed Settlement should not be construed as an admission of liability. (Doc. No. 17 at PageID 117; Doc. No. 17-1 at PageID 133.) Such dispute is further evidenced by the adversarial nature of the present action. For instance, this Proposed Settlement only comes after the Parties' unsuccessful mediation in March 2023. (Doc. No. 17 at PageID 126.) Hence, the Parties have sufficiently illustrated the existence of a bona fide dispute.

### B. <u>Fair and Reasonable Resolution</u>

"After a district court is satisfied that a bona fide dispute exists, it must then determine whether the settlement is fair and reasonable." *Selk*, 159 F. Supp. 3d at 1172; *see also Lynn's Food Stores*, 679 F.2d at 1353 (before providing approval, a court must "scrutiniz[e] the settlement for fairness"). In making this determination, some courts have considered six factors in a totality of the circumstances approach. *See, e.g., Selk*, 159 F. Supp. 3d at 1173 (formulating the six factors "[a]fter reviewing the relevant case law, and having considered the history and policy of the FLSA"); *Lopez v. Silfex, Inc.*, No. 3:21-cv-61, 2021 U.S. Dist. LEXIS 232508, at *13, 2021 WL 5795280, at *4 (S.D. Ohio Dec. 3, 2021).[2]

---

[2] Some district courts in the 6th Circuit consider the seven-factor test used to assess whether or not a class action settlement is "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e). *See, e.g., Athan*, 523 F. Supp. 3d at 965 ("courts consider, as applicable: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement."); *see also Does 1-2 v. Déjà vu Servs., Inc.* 925 F.3d 886, 894-95 (6th Cir. 2019) (setting forth this seven-factor test in its review of a district court's approval of a class action settlement). However, in keeping with this Court's decision in *Lopez*, the Court instead applies the six factors set forth in *Selk* here. *Lopez*, 2021 WL 5795280, at fn. 2. The Court notes that this distinct treatment comports with the 6th Circuit's recent decision,

Accordingly, the Court will consider the following six circumstantial factors to determine whether the Proposed Settlement is fair and reasonable under the FLSA: (1) Plaintiffs' range of possible recovery; (2) the stage of the proceedings and the amount of discovery completed; (3) the seriousness of the litigation risks faced by the Parties; (4) the scope of any release provision in the Proposed Settlement; (5) the experience and views of counsel and the opinion of Plaintiffs; and (6) the possibility of fraud or collusion. *Selk*, 159 F. Supp. 3d at 1173.

### 1. Plaintiffs' Range of Possible Recovery

Courts evaluate a "plaintiff's range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims." *Selk*, 159 F. Supp. 3d at 1174. "The settlement amount need not represent a specific percentage of the maximum possible recovery," but the court must be satisfied that, in comparing the amount proposed in the settlement with the amount that plaintiffs could have obtained at trial, "the amount left on the settlement table is fair and reasonable under the circumstances presented." *Id.*; *see also Crawford*, 2008 U.S. Dist. LEXIS 90070, 2008 WL 4724499 (approving proposed settlement despite finding that, "[g]iven the factual and legal complexity of the case, it is difficult to gauge the likelihood of the plaintiffs' success at trial"). The analysis may take into consideration "the possibility that plaintiffs would recover nothing." *Selk*, 159 F. Supp. 3d at 1175 (in finding the proposed settlement fair and reasonable, explaining that, "although the payouts to individual plaintiffs are small, the certainty of recovery helps prevent the additional damage that would befall plaintiffs if the case proceeds and is ultimately resolved against them").

---

recognizing FLSA collective actions as "fundamentally different" from class actions under Fed. R. Civ. P. 23. *Clark v. A&L Home Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023) (internal citations and quotation marks omitted). Moreover, the Court's analysis would reach the same conclusions regardless of whether it applied the six-factor test from *Selk* or the seven-factor test used to assess whether a class action settlement is "fair, reasonable, and adequate" under Rule 23(e).

9

Here, Plaintiffs are situated to receive settlement amounts that closely mirror their claims for relief. In their Motion, the Parties provide precise calculations for the maximum amount that each Plaintiff stands to receive at trial. (Doc. No. 17 at PageID 122-24.) Pursuant to these calculations, Christine Lewis, Phillip Lewis, and Camden Lewis allege total damages in the respective amounts of $4,681.00, $4,283.84, and $6,210.00. (*Id.*) The Proposed Settlement ultimately provides total damages in the amount of $5,000.00 to each Plaintiff. (Doc. No. 17-1 at PageID 130.)

It is difficult to gauge the likelihood of plaintiffs' success at trial at this stage. Yet, the settlement amounts proposed here bear a reasonable relationship to the true settlement value of the claims. *Selk*, 159 F. Supp. 3d at 1174. Notably, Christine Lewis and Phillip Lewis would receive more from this Proposed Settlement than if their claims proceeded to trial. (Doc. No. 17 at PageID 122-23.) This is due to the Proposed Settlement's release provision, which will be discussed in greater detail below. (Doc. No. 17 at PageID 127, fn. 4.) Nevertheless, the settlement proposed would afford Plaintiffs nearly full recovery on their FLSA claims. Therefore, this factor leans in favor of finding the Proposed Settlement to be fair and reasonable.

**2. Stage of the Proceedings and Discovery**

Regarding the second factor, courts should "ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Selk*, 159 F. Supp. 3d at 1177. "So long as the parties have sufficient information to make an informed decision about settlement, this factor will weigh in favor of approval." *Id.*; *see also Athan*, 523 F. Supp. 3d at 967. Although the current case is in the early stages of litigation, the Parties have "engaged in written discovery, extensive document production, formal mediation," and ongoing settlement discussions. (Doc. No 17 at PageID 117.) These efforts have undoubtedly allowed the Parties to exchange a wealth of

10

information, pose their legal arguments, and formulate an informed basis for negotiating the Proposed Settlement. Thus, this factor leans in favor of finding the Proposed Settlement to be fair and reasonable.

### 3. Seriousness of the Parties' Litigation Risks

Courts will weigh the seriousness of the litigation risks in favor of approving a proposed settlement if "there is a significant risk that litigation might result in a lesser recovery . . . or no recovery at all." *Selk*, 159 F. Supp. 3d at 1175 (internal quotation marks omitted) (finding the factor weighed in favor of approving the proposed settlement where plaintiff's success on the FLSA "claim at trial is far from assured"). In evaluating this factor, courts may consider whether the settlement would provide plaintiffs with definite compensation now rather than waiting for an eventual resolution that would result in further expense without any definite benefit. *See Id.*; *Athan*, 523 F. Supp. 3d at 967 (finding parties' settlement to be a reasonable means for the parties to minimize future time expended, risks, and litigation costs); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *22, 2008 WL 4724499, at *6-7 ("by settling, the plaintiffs have avoided significant additional expenses," where the potential for a case of long duration was of concern to the parties).

Here, the risk of litigation and uncertainty of recovery supports a finding that the proposed settlement is fair and reasonable. Further litigation likely would require costly discovery, extensive motion practice, pretrial conferences, and a potential trial—all involving significant time and expense. *See Athan*, 523 F. Supp. 3d at 967. The proposed settlement would further provide Plaintiffs prompt and efficient relief. As explained above, regarding the presence of a bona fide dispute, there are disputed issues of fact and law and success at trial for either party is not guaranteed. As such, this factor militates in favor of finding the Proposed Settlement to be fair and reasonable.

### 4. Scope of the Proposed Settlement's Release Provision

The Court now considers the scope of the Proposed Settlement's release provision. "A settlement agreement that includes an overbroad release provision may be found unfair and unreasonable." *O'Bryant*, 2020 U.S. Dist. LEXIS 138599, at *38-39, 2020 WL 4493157, at *14 (citing *Selk*, 159 F. Supp. 3d at 1178). The release provision in a proposed FLSA settlement agreement should generally mirror the FLSA claims being settled. *Selk*, 159 F. Supp. 3d at 1178. In short, the claims released need to "share a factual predicate with the claims pled in the complaint." *O'Bryant*, 2020 U.S. Dist. LEXIS 138599, at *39, 2020 WL 4493157, at *15 (quoting *Does 1-2*, 925 F.3d at 900); *see also Baker v. ABC Phones of North Carolina, Inc.*, No. 19-cv-2378, 2020 U.S. Dist. LEXIS 240695, at *10, 2020 WL 7634780, at *11 (W.D. Tenn. Dec. 22, 2020) ("[t]he scope of the revised release is appropriate because 'the release specifically cabins the categories of relinquished claims to those based upon or reasonably related to the pleadings and claims asserted in the Settlement Agreement'") (quoting *Does 1-2*, 925 F.3d at 900).

"The concern is that an expansive release of claims would effectively allow employers to use employee wages – wages that are guaranteed by statute – as a bargaining chip to extract valuable concessions from employees." *Selk*, 159 F. Supp. 3d at 1178; *see also O'Bryant*, 2020 U.S. Dist. LEXIS 138599, at *39, 2020 WL 4493157, at *14 (a court should not let an employer "use a settlement agreement to purchase a broad-based litigation shield in exchange for unpaid wages that class members are entitled to by statute") (internal quotation marks omitted). However, "[c]ourts are less skeptical of a broad release of claims when the employee receives independent compensation from the employer as consideration for the release." *Selk*, 159 F. Supp. 3d at 1179 (approving separate release by the named plaintiff (only) where, although the release extended beyond the FLSA claims at issue to include any claim that the named plaintiff-employee may have

12

against her defendant-employer, a separate release payment made only to the named plaintiff justified the broader release); *see also Baker*, 2020 U.S. Dist. LEXIS 240695, at *10, 2020 WL 7634780, at *12 (approving general release that applied only to the named plaintiff and not to opt-in plaintiffs).

In the instant case, the Parties have included a release provision in the Proposed Settlement that is overbroad on its face. The Proposed Settlement provides for Defendant's release from liability for "any claims or rights asserted or arising out of or in connection with Employees' employment . . ." (Doc. No. 17-1 at PageID 132.) In particular, the release provision requires Christine Lewis and Phillip Lewis to drop their separate claims against Defendant that are currently before the Department of Labor, but not before this Court. (*Id.* at PageID 132-33.) Recall that Plaintiffs' FLSA claims here are based on Defendant's failure to pay Plaintiffs statutorily guaranteed overtime compensation. (Doc. No. 15 at PageID 90.) The Court fails to see any factual predicate between Plaintiffs' claims and the Proposed Settlement's release provision apart from the fact that Plaintiffs were once employed by Defendant.

The Parties assert that the amounts to be paid to Plaintiffs in the Proposed Settlement include independent compensation for Plaintiffs' broader release. (Doc. No. 17 at PageID 127, at fn. 4.) However, this contention is found in a footnote to the Motion rather than the Proposed Settlement. (*Id.*) If the Parties intend to provide Plaintiffs with independent compensation to settle any pending separate claims and/or potential future claims not connected to the FLSA claims at issue here, they should say as much on the face of the Proposed Settlement. This may require an updated accounting of the amounts to be paid to Plaintiffs through settlement. However, it is necessary to justify the broad release of the Proposed Settlement.

Therefore, this factor militates against finding the Proposed Settlement to be fair and reasonable.

### 5. Views of Counsel and Plaintiffs

The Court next considers the experience and views of counsel and the opinion of Plaintiffs. "[T]he opinions of counsel should be given considerable weight" if counsel is familiar with the litigation and has previous experience with similar cases. *Selk*, 159 F. Supp. 3d at 1176. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Id.* (internal quotation marks omitted). However, the court should consider whether anything in the record calls into question the experience of counsel or raises doubt about counsel's judgment. *Id.* The opinion of plaintiffs should also be taken into consideration. *Id.*; *Athan*, 523 F. Supp. 3d at 968 (in approving proposed settlement, considering the class representatives' signature on the proposed agreement as indicating that they believed it was a fair and reasonable compromise of the disputed issues).

Here, Plaintiffs' counsel have extensive experience in the field of employment law. (Doc. No. 17-2 at PageID 139.) It is also apparent that counsel is familiar with this litigation. (*Id.* at PageID 138.) Plaintiffs' counsel believe that the Proposed Settlement is fair, reasonable, and adequate. (*Id.*) Additionally, Plaintiffs each signed the Proposed Settlement, indicating their assent to its terms. (Doc. No. 17-1 at PageID 135.) Accordingly, this factor weighs in favor of finding the Proposed Settlement to be fair and reasonable.

### 6. Possibility of Fraud or Collusion

Lastly, the Court looks to whether the Proposed Settlement presents the possibility of fraud or collusion. In assessing this factor, courts look for evidence that the proposed settlement resulted from, or was influenced by, fraud or collusion. *Selk*, 159 F. Supp. 3d at 1179. "In the absence of

14

evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel." *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *20, 2008 WL 4724499, at *6; *see also Selk*, 159 F. Supp. 3d at 1179 (finding factor weighing in favor of approving proposed settlement where "nothing on the face of the record" suggested counsel "allowed the pursuit of their own self-interests and that of certain class members to infect the negotiation").

The present case shows no evidence of fraud or collusion in the crafting the Proposed Settlement. The Parties reached an arms-length settlement, after an unsuccessful mediation and extensive written discovery. (Doc. No. 17 at PageID 117.) Therefore, this factor weighs in favor of finding the Proposed Settlement to be fair and reasonable.

### C. Confidentiality

Although five factors weigh in favor of finding the Proposed Settlement fair and reasonable, the Court must also consider the confidentiality provision of the Proposed Settlement (Doc. No 17-1 at PageID 132). In their Motion, the Parties acknowledge – albeit in a footnote – that such provisions in FLSA settlements are generally disfavored. (Doc. No. 17 at PageID 127, fn. 4.) However, the Parties argue that this case is unique. (*Id.*) They state that the confidentiality provision in their Proposed Settlement is designed to prevent confusion surrounding settlement amounts that are intended to compensate Plaintiffs for a broad release rather than Plaintiffs' FLSA claims alone. (*Id.*) The Parties additionally emphasize that they are not requesting the Proposed Settlement be sealed; only that the Parties mutually agree not to discuss their settlement with third parties. (*Id.*) Ultimately, the Parties ask that the Court approve the Proposed Settlement with the inclusion of this confidentiality provision. (*Id.*)

Generally, confidentiality provisions in FLSA settlement agreements are disfavored because they contravene "the legislative purpose of the FLSA" and undermine "the Department of

15

Labor's regulatory effort to notify employees of their FLSA rights." *Chime v. Fam. Life Counseling and Psychiatric Servs.*, No. 1:19-cv-2513, 2020 U.S. Dist. LEXIS 214765, at *10, 2020 WL 6746511, at *4 (N.D. Ohio Nov. 17, 2020) (quoting *Steele v. Staffmark Inv., LLC*, 172 F. Supp. 3d 1024, 1031 (W.D. Tenn. 2016)) (internal citations and quotation marks omitted). "Confidentiality agreements arguably impair the right of employees to engage in their own protected activity and at the same time advise co-workers about their own rights under the FLSA . . . ." *Id.* (quoting *David v. Kohler Co.*, No. 1:15-cv-01263-STA-jay, 2019 U.S. Dist. LEXIS 213737, 2019 WL 6719840, at *5 (W.D. Tenn. Dec. 10, 2019)) (internal quotation marks omitted). The same principle applies to mutual confidentiality provisions like the one at issue in this case. *Johnson v. Labtox, LLC*, No. 5:22-019-DCR, 2022 U.S. Dist. LEXIS 198577, at *10-11, 2022 WL 16579300, at *4 (E.D. Ky. Nov. 1, 2022) ("While the parties do not seek permission to file the agreement under seal, the provision significantly restricts the plaintiff's ability to communicate with others about the issues raised in this litigation") Notwithstanding, an exception to this general rule may exist where the confidentiality provision is a material term of the agreement, without which no settlement would have been reached. *Athan*, 523 F. Supp. 3d at 969 (approving parties' confidentiality provision where "the issue of confidentiality was seen as a lynchpin of their bargain during negotiations, and that without it, they would have been unable to reach a mutual agreement").

Here, the Parties have not demonstrated the necessity of the mutual confidentiality provision in the Proposed Settlement. For one, the Parties do not allege that the Proposed Settlement's mutual confidentiality provision is a critical term of their agreement. More importantly, the circumstances of this case suggest that confidentiality is not critical or appropriate. The Parties argue that mutual confidentiality here will prevent confusion derived from the

Proposed Settlement's release provision. (Doc. No. 17 at PageID 127, fn. 4.) However, the Court has explained that Proposed Settlement's release provision is overbroad, in any event. If remedied, as directed above, the Parties would presumably have no need for mutual confidentiality. Otherwise, the Proposed Settlement's confidentiality provision only serves to stifle Plaintiffs' protected activity and hinder the policy initiatives of the FLSA. It is immaterial that the Proposed Settlement would not be sealed on the Court's docket. *Johnson*, 2022 U.S. Dist. LEXIS 198577, at *10-11, 2022 WL 16579300, at *4. Therefore, the Court cannot approve the Proposed Settlement with the inclusion of this confidentiality provision.

### D. Attorneys' Fees

Finally, the Court must determine whether the attorneys' fees and expenses provided in the Proposed Settlement constitute a reasonable fee award. *O'Bryant*, 2020 U.S. Dist. LEXIS 138599, at *43, 2020 WL 4493157, at *15 (citing *Hawkins v. Accurate Nursing Servs., Inc.*, No. 5:19-cv-1572, 2020 U.S. Dist. LEXIS 36158, 2020 WL 1031530, at *1 (N.D. Ohio Mar. 3, 2020); 29 U.S.C. § 216(b)). "The starting point for determining a reasonable fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate." *Johnson*, 2022 U.S. Dist. LEXIS 198577, at *8, 2022 WL 16579300, at *3 (citing *United Slate, Tile and Composition Roofers, Damp, and Waterproof Workers Ass'n, Loc. 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)).

Here, the Parties have suggested a reasonable award of attorneys' fees and expenses to Plaintiffs' counsel. As previously stated, the Proposed Settlement provides Plaintiffs' counsel a sum of $21,219.00 for attorneys' fees and expenses. (Doc. No. 17-2 at PageID 131.) Although this amount constitutes approximately 58% percent of the total settlement amount[3], the Court finds

---

[3] Dividing $21,219.00 by $36,219.00. (Doc. No. 17-1 at PageID 130-131.)

the award to be reasonable, nonetheless. To reach the proposed attorneys' fees and expenses here, the Parties utilized the lodestar method to establish a baseline fair amount. (Doc. No. 17 at PageID 128.) In doing so, the Parties multiplied the number of hours worked by Plaintiffs' counsel – 144.8 hours – by the reasonable hourly rate of $350.00 per hour. (*Id.*) The end result of the lodestar method in this case would entitle Plaintiffs' counsel to an award of $50,680.00. (*Id.*) Instead, the Proposed Settlement provides Plaintiffs' counsel an award that reflects and hourly rate of approximately $146.50 per hour. Put simply, the current Proposed Settlement was negotiated with a significant downward deviation from the lodestar respecting attorneys' fees and expenses. Thus, the Court finds the proposed attorneys' fees and expenses to be reasonable here.

IV. **CONCLUSION**

For the reasons stated above, the Court finds the following:

1. The Parties' Joint Motion for Approval of Parties' Settlement Agreement (Doc. No. 17) is **DENIED WITHOUT PREJUDICE**.

2. The Parties are hereby **ORDERED** to file a status report or a renewed joint motion for settlement approval in accordance with this Entry and Order, within **fourteen (14) days** of this order.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, October 17, 2023.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE