IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CHRISTINE LEWIS, et al. | : | |
| | : | Case No.  3:22-cv-141 |
| Plaintiffs, | : | |
| | : | JUDGE THOMAS M. ROSE |
| v. | : | |
| | : | MAGISTRATE JUDGE PETER B. |
| OLD SOUL'S FARMS, LLC | : | SILVAIN, JR. |
| | : | |
| Defendant. | : | |
| | : | |

### SECOND JOINT MOTION FOR APPROVAL OF PARTIES' SETTLEMENT AGREEMENT

Plaintiffs Christine Lewis, Phillip Lewis, and Camden Lewis (collectively, "Plaintiffs") and Defendant Old Soul's Farms, LLC, ("Defendant") hereby request, through their undersigned counsel, that the Court provide an entry of an order approving the settlement between the Plaintiffs and Defendant pursuant the Fair Labor Standards Act.  A copy of the parties' Settlement Agreement is attached hereto as Exhibit A, Declaration of Bradley L. Gibson as Exhibit B, and a proposed Order is attached hereto as Exhibit C.  A Memorandum in Support of this Motion follows below.

Respectfully submitted,

/s/ Angela J. Gibson
Bradley L. Gibson (0085196)
Angela J. Gibson (0080928)
GIBSON LAW, LLC
9200 Montgomery Road, Suite 11A
Cincinnati, OH 45242
brad@gibsonemploymentlaw.com
angela@gibsonemploymentlaw.com
513.834.8254 (T)
513.834.8253 (F)

/s/ Marc J. Kessler
Marc J. Kessler (0059236)
TAFT STETTINIUS & HOLLISTER LLP
41 South High Street, Suite 1800
Columbus, OH 43215-6106
614.220.0237 (T)
614.221.2007 (F)
MKessler@taftlaw.com

*Counsel for Defendant*

1

*Counsel for Plaintiffs*

**MEMORANDUM IN SUPPORT**

**I.    INTRODUCTION**

Plaintiffs Christine Lewis, Phillip Lewis, and Camden Lewis (collectively, "Plaintiffs") brought this action against Defendant Old Soul's Farm, LLC, ("Defendant"), asserting: (1) claims based upon a failure to pay wages timely as required under O.R.C. 4113.15; and, (2) claims of unpaid overtime under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq.*, Ohio Minimum Fair Wage Standards Act, and Ohio Constitution, Art. II, §34a. Plaintiffs' claim for unpaid overtime under the FLSA is premised on Defendant's alleged failure to properly compensate them for all overtime hours worked as required by the FLSA. Plaintiffs claim that Defendant required them to perform uncompensated work for their respective break times that lasted twenty minutes or less. Plaintiffs indicate that this uncompensated work resulted in unpaid overtime. Defendant disputes Plaintiffs' claims, alleging, among other things, that Plaintiffs were not legally entitled to compensation for the breaks in which they are claiming they should receive compensation and, to the extent that Plaintiffs were legally entitled to pay for those breaks, it did not result in the amount of unpaid overtime Plaintiffs are claiming is owed to them.

The parties request that the Court approve their proposed settlement of Plaintiffs' claims against the Defendant. The parties engaged in written discovery, extensive document production, formal mediation, and subsequent settlement discussions that have led to an agreement between the parties. The parties request the Court's approval because the terms of the settlement are adequate, fair, and reasonable.

## II. SETTLEMENT TERMS

The material terms reflected in the attached Agreement provides for payment to Plaintiffs for overtime wage compensation by Defendant for the time periods in which Plaintiffs can potentially collect compensation in this action under the FLSA, OMFWSA, and the Ohio Constitution.[1] The Agreement directs that Defendant will, without any admission of liability, pay the total sum of $36,219.00 to Plaintiffs and their legal counsel as allocated as follows:

(1) In exchange for the release of the claims set forth in the captioned lawsuit (the "Wage and Hour Claims") by Plaintiff Christine Lewis, payment to Plaintiff "Christine Lewis" in the amount of $1,250.00 representing back wages and a second payment to Plaintiff "Christine Lewis" in the amount of $1,250.00 representing liquidated damages.

(2) In exchange for the release of all other claims whether known or unknown, disputed or undisputed, arising out of, under, or by reason of any matter whatsoever from the beginning of time through and including the date that Plaintiffs execute the Settlement Agreement and Release, including but not limited to the Complaint Christine Lewis filed with the Department of Labor, Case No. 5-1610-22-056 ("Christine Lewis' OSHA Claims"), as set forth in Paragraph 4 of the Settlement Agreement and Release, payment to Plaintiff "Christine Lewis" in the amount of $1,250.00 representing alleged economic damages and a second payment to Plaintiff "Christine Lewis" in the amount of $1,250.00 representing alleged non-economic damages.

(3) In exchange for the release of the claims set forth in Plaintiff Phillip Lewis' Wage and Hour Claims, payment to Plaintiff "Phillip Lewis" in the amount of $1,250.00

---

[1] Attached hereto as Exhibit A is the parties' agreed upon "Settlement Agreement and Release."

representing back wages and a second payment to Plaintiff "Phillip Lewis" in the amount of $1,250.00 representing liquidated damages.

(4) In exchange for the release of all other claims whether known or unknown, disputed or undisputed, arising out of, under, or by reason of any matter whatsoever from the beginning of time through and including the date that Plaintiffs execute the Settlement Agreement and Release, including but not limited to the Complaint Phillip Lewis filed with the Department of Labor, Case No. 5-1610-22-062 ("Phillip Lewis' OSHA Claims"), as set forth in Paragraph 4 of the Settlement Agreement and Release, payment to Plaintiff "Phillip Lewis" in the amount of $1,250.00 representing alleged economic damages and a second payment to Plaintiff "Phillip Lewis" in the amount of $1,250.00 representing alleged non-economic damages.

(5) In exchange for the release of the claims set forth in Plaintiff Camden Lewis' Wage and Hour Claims, payment to Plaintiff "Camden Lewis" in the amount of $1,500.00 representing back wages and a second payment to Plaintiff "Camden Lewis" in the amount of $1,500.00 representing liquidated damages.

(6) In exchange for the release of all other claims whether known or unknown, disputed or undisputed, arising out of, under, or by reason of any matter whatsoever from the beginning of time through and including the date that Plaintiffs execute the Settlement Agreement and Release, as set forth in Paragraph 4 of the Settlement Agreement and Release, payment to Plaintiff "Camden Lewis" in the amount of $1,000.00 representing alleged economic damages and a second payment to Plaintiff "Camden Lewis" in the amount of $1,000.00 representing alleged non-economic damages.

(7) Payment to Gibson Law, LLC in the amount of $21,219.00 representing attorneys' fees and costs associated with bringing this action.

In exchange for the monetary and other consideration recited in the Agreement, Plaintiffs hereby agree to dismiss the Lawsuit with prejudice and on the merits. Plaintiffs shall release any and all of their wage-and-hour claims that were or could have been brought based on the specific factual allegations contained in the Action, that occurred or are alleged to have occurred at any time through the Approval Date, including without limitation claims for minimum wage payments, overtime compensation, penalties, liquidated damages, interest, attorneys' fees or expenses, and further including claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111 *et seq.*, the Ohio Constitution, and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15 ("Released Claims"). Furthermore, "Released Claims" include any claims that were or could have been brought on an individual basis.

Plaintiffs also release and covenant not to sue Defendant from any matter arising out of or in any way related, directly or indirectly, to Plaintiffs' employment with Defendant, Plaintiffs' compensation and/or the termination thereof, the Released Claims, or with respect to any other transaction, event or occurrence pre-dating the date of this Agreement, whether now known or unknown, including, but not limited to, any claim of breach of contract, wrongful discharge, intentional infliction of emotional distress, retaliation and/or employment discrimination, whether in tort or in contract, any statutory or common law claim for attorneys' fees, any claim for interest on the amounts due hereunder, or any other claim under present or future federal, state or local statute or law, including, but not limited to, the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §2101, *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA"); the Civil Rights Act of 1866, 42 U.S.C. §1981; the Civil Rights Act of 1991, P.L. 102-166; the Americans With Disabilities Act, 42 U.S.C. §12101, *et seq.*; the Fair Labor Standards Act of 1938, 29 U.S.C. §201, *et seq.*; the Equal Pay Act, 29 U.S.C. §206(d); the Lilly Ledbetter Fair Pay Act, Public Law No. 111-2; the Family and

Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq.*; the Occupational Safety and Health Act of 1970, 29 U.S.C. §553, *et seq.*; the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.*; the Consolidated Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. §1161, *et seq.*; the National Labor Relations Act, 29 U.S.C. §151, *et seq.;* and any statutory amendments, R.C. Chapters 4111 and 4112; and Ohio Constitution Art. II, §§34 and 34a.

### A. Proposed Settlement Amount is Fair and Reasonable Resolution of Bona Fide Dispute of FLSA Violations

Approval of the settlement under 29 U.S.C. § 216(b) is appropriate and is warranted in this case. Court approval of FLSA settlements is appropriate when reached as a result of contested litigation to resolve bona fide disputes. Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1358, fn.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. Id. at 1353-1354. The Court should also consider the following factors: the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likelihood of success on the merits, and the public interest in settlement. Crawford v. Lexington–Fayette Urban Cnty. Gov., 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (citing Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)). If, however, the proposed settlement reflects a reasonable compromise over contested issues, a court should approve the settlement. Id. at 1354. In the instant matter, the settlement was a result of an arm's-length negotiation between competent Plaintiffs' and Defendant's legal counsel experienced in FLSA litigation.

Plaintiff Christine Lewis worked for Defendant from June 7, 2021 to December 13, 2021 as a line worker and subsequently, as a quality control technician. (ECF Doc. # 15, PAGEID # 89). She was paid an hourly rate ranging from $12 to $14.50 and she was generally scheduled to be at Defendant's location for 9 hours per day, five days per week. (Id.)

Plaintiff Phillip Lewis worked for Defendant from July 19, 2021 until February 18, 2022 as a Safety and Maintenance Coordinator. (Id.) He was paid an hourly rate of $16.50 and was generally scheduled to be at Defendant's location for 9 hours per day, five days per week. (Id.)

Plaintiff Camden Lewis worked for Defendant from June 21, 2021 until April 7, 2022 as a line worker. (Id.) His hourly rate ranged from $12 to $14.50 and he was generally scheduled to be at Defendant's location 10 hours or more per day, five days per week. (Id.)

Plaintiffs allege that Defendant required them to take no more than two 20-minute breaks during their workday. (Id. at PAGEID #90). Plaintiffs allege that Defendant deducted one to two 20-minute breaks from the daily hours worked by them. (Id.) Plaintiffs further allege that the 20-minute break deduction policy violated the FLSA and Ohio Acts because they failed to compensate them for all hours worked over forty (40) at a rate of at least one and one-half times their regular rates of pay. (Id.) Specifically, Plaintiffs contend that the 20-minute breaks were "rest breaks," which must be compensated pursuant to 29 C.F.R. 785.18. Plaintiffs contend that the Southern District of Ohio has strictly followed a bright line test, noting that "the Department of Labor ('DOL') has 'consistently held for over 45 years' that short breaks lasting 20 minutes or less are compensable as hours worked." Rose v. Velocys, Inc., Case No. 2:17-cv-635, 2018 U.S. Dist. LEXIS 193447, *12 (Nov. 13, 2018).

Defendants contend that the automatic break deductions were not unlawful because they constituted "bona fide meal breaks" pursuant to 29 C.F.R. § 785.19(b). Though "bona fide meal breaks" generally last 30 minutes or more, the Department of Labor regulations specify that "a

8

shorter period may be long enough under special circumstances." Defendant claims that the same is justified in this case because, in part, it claims that the Plaintiffs were completely uninterrupted for a period of time sufficient to allow them to consume their meals. Further, Defendant contends that many of Plaintiffs' breaks exceeded 20 minutes based on business records they produced during discovery. Finally, Defendant produced documents showing that employees who did not take their breaks and notified Defendant were paid for their break times. Defendant denies that Plaintiffs ever reported working through breaks.

Plaintiffs assert that they are each owed the below amounts for unpaid overtime:

*Plaintiff Christine Lewis*:

Ms. Lewis worked 27 weeks (June 7, 2021 through December 13, 2021).[2] After reviewing the paystubs that Ms. Lewis possessed consisting of 24 workweeks, she worked over 40 hours per workweek approximately 75% of the time. Extrapolating from this number, she worked approximately 20.25 workweeks of overtime out of her total 27 workweeks with Defendant. Further assuming Defendant automatically deducted two 20-minute breaks each workday, Plaintiff Christine Lewis would be entitled to 3.3 hours of overtime per week. Using an average of her pay rates over her employment, her overtime rate is $19.88 per hour (average hourly rate of $13.25 x 1.5). Thus, Ms. Lewis asserts that she is owed **$1,328** in unpaid overtime (3.3 x $19.88 x 20.25 workweeks). If she is awarded liquidated damages, she would be entitled to an **additional $1,328**. See 29 U.S.C. § 216(b). In addition, Plaintiff Christine Lewis alleges that pursuant to Ohio Revised Code Section 4113.15, she is owed an additional "amount equal to six percent of the amount of the claim still

---

[2] Plaintiffs filed their lawsuit on May 25, 2022. As such, the time period in which they worked fall within a two-year lookback period.

unpaid and not in contest or disputed or two hundred dollars, whichever is greater." O.R.C. 4113.15. Plaintiff Christine Lewis, therefore, alleges that she is owed **$2,025** (20.25 workweeks paid biweekly = approximately 10 pay periods x $200) pursuant to O.R.C. 4113.15. Thus, Plaintiff Christine Lewis alleges a <u>total of $4,681 in damages for her unpaid overtime claims</u>.

Plaintiff Christine Lewis also has a pending wrongful termination claim filed with the Occupational Safety and Health Administration ("OSHA"), in which she claims that she was terminated for reporting food safety violations and occupational safety hazards in violation of the FDA Food Safety Modernization Act, 21 U.S.C. §399d, and Section 11(c) of the OSH Act. Plaintiff Christine Lewis seeks backpay for her period of unemployment in the approximate amount of $10,000 and emotional distress damages following her termination. Defendant disputes Plaintiff Christine Lewis' OSHA claims on the grounds that she (1) was terminated for legitimate, non-retaliatory reasons, (2) failed to mitigate her damages, (3) failed to file her claim under Section 11(c) of the OSH Act within the 30-day statute of limitations, and (4) is unable to establish a causal connection between her termination and her complaints because it did not terminate her "at the first opportunity available to the respondent" following its knowledge of her complaints. 29 C.F.R. §1987.104(e)(3).

The Parties' settlement agreement releases Plaintiff Christine Lewis' unpaid overtime claims and requires her to request withdrawal of her OSHA complaint.

***Plaintiff Phillip Lewis***:

Plaintiff Phillip Lewis worked approximately 31 weeks (July 19, 2021 through February 18, 2022). After reviewing the paystubs that Plaintiff Phillip Lewis possessed consisting of 30 workweeks, he worked over 40 hours per workweek approximately 53% of the time. Extrapolating from this number, he worked approximately 16.43 workweeks of overtime out of his total 31 workweeks with Defendant. Further assuming Defendant automatically deducted two 20-minute

10

breaks each workday, Plaintiff Phillip Lewis would be entitled to 3.3 hours of overtime per week. Plaintiff Phillip Lewis' overtime rate was $24.75 per hour ($16.50 x 1.5). Thus, Plaintiff Phillip Lewis alleges he is owed **$1,341.92** in unpaid overtime (3.3 x $24.75 x 16.43 workweeks). If he is awarded liquidated damages, he would be entitled to an **additional $1,341.92**. See 29 U.S.C. § 216(b). In addition, Plaintiff Phillip Lewis alleges that pursuant to Ohio Revised Code Section 4113.15, he is owed an additional "amount equal to six percent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater." O.R.C. 4113.15. Mr. Lewis, therefore, alleges that he is owed **$1,600** (16.43 workweeks paid biweekly = approximately 8 pay periods x $200) pursuant to O.R.C. 4113.15. Thus, Mr. Lewis alleges a total of $4,283.84 in damages for his unpaid overtime claims.

Plaintiff Phillip Lewis also has a pending wrongful termination claim filed with OSHA, in which he claims that he was terminated for reporting concerns about safety hazards and/or because of his association with Plaintiff Christine Lewis (his wife). Plaintiff Phillip Lewis claims that the reason provided for termination was a pretext for unlawful retaliation pursuant to the FDA Food Safety Modernization Act, 21 U.S.C. §399d, and Section 11(c) of the OSH Act. Plaintiff Phillip Lewis seeks backpay for his period of unemployment, exceeding $20,000, in addition to emotional distress damages. Defendant disputes Mr. Lewis' OSHA claims on the grounds that he (1) was terminated for legitimate, non-retaliatory reasons, (2) failed to mitigate damages, and (3) did not have a sufficient connection to Plaintiff Christine Lewis's alleged protected activity such that her protected activity can be imputed to him to establish a claim.

The Parties' settlement agreement releases Plaintiff Phillip Lewis' unpaid overtime claims and requires him to request withdrawal of his OSHA complaint.

***Plaintiff Camden Lewis***:

Plaintiff Camden Lewis worked approximately 42 workweeks (June 21, 2021 until April 7, 2022). After reviewing the paystubs that Plaintiff Camden Lewis possessed consisting of 26 workweeks, he worked over 40 hours per workweek approximately 62% of the time. Extrapolating from this number, he worked approximately 27 workweeks of overtime out of his total 42 workweeks with Defendant. Further assuming Defendant automatically deducted two 20-minute breaks each workday, Plaintiff Camden Lewis claims that he would be entitled to 3.3 hours of overtime per week. Plaintiff Camden Lewis' average overtime rate was $19.88 (average hourly rate of $13.25 x 1.5). Thus, Plaintiff Camden Lewis alleges that he is owed **$1,705** (3.3 x $19.88 x 26 workweeks). If he is awarded liquidated damages, he would be entitled to an **additional $1,705**. See 29 U.S.C. § 216(b). In addition, Plaintiff Camden Lewis alleges that pursuant to Ohio Revised Code Section 4113.15, he is owed an additional "amount equal to six percent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater." O.R.C. 4113.15. Mr. Lewis, therefore, alleges that he is owed **$2,800** (27 workweeks paid biweekly = approximately 14 pay periods x $200) pursuant to O.R.C. 4113.15. Thus, Plaintiff Camden Lewis alleges a total of $6,210.00 in damages for his unpaid overtime claims.

Defendant denies that Plaintiffs are entitled to the overtime amount they claim because the breaks are non-compensable bona fide meal periods for which "special conditions" exist. Specifically, Defendant contends that Plaintiffs were completely uninterrupted for a period of time sufficient to allow them to consume their meals adequately and comfortably and to deal with matters unrelated to their work. Defendant claims that its facility was designed so that employees did not have to leave the premises to enjoy a full meal break. Defendants likewise claim that although 20 minutes were automatically deducted for breaks, Plaintiffs, in actuality, often received breaks lasting longer than 20 minutes. Defendant also argues that they had a handbook policy requiring employees to notify their supervisor of any unrecorded work hours and that Plaintiffs failed to report that pay

12

for compensable rest breaks was improperly deducted. For these reasons, Defendant argues that no overtime is owed. Further, Defendant contends that it is not liable for damages pursuant to O.R.C. 4113.15 since the amounts were, and are, disputed.

In light of the parties' respective positions, the parties have agreed to resolve their claims pursuant to the requirements set forth in the attached Agreement. The settlement is fair, just, and an adequate resolution of Plaintiffs' unpaid overtime claim because, as a threshold issue, the settlement amount attributable to the Wage and Hour Claims is 48% of Plaintiff Camden Lewis' damages if he succeeded on all of his Wage and Hour Claims, which includes compensation for 100% of his alleged unpaid overtime, 58% of Plaintiff Phillip Lewis' damages if he succeeded on all of his Wage and Hour Claims, which includes compensation for 100% of his alleged unpaid overtime, and 53% of Plaintiff Christine Lewis' damages if she succeeded on all of her Wage and Hour Claims, which includes compensation for 100% of her alleged unpaid overtime. Additional compensation is also provided to each Plaintiff in consideration for their release of other, non-Wage and Hour Claims.

The settlement is also fair in this case considering the necessary time and expense to further litigate this case. As counsel for the parties well understand, litigation is an inherently risky and lengthy process. Formal discovery in this action, which has been limited in nature thus far, will necessarily be time consuming and complex, as this case involves significant fact-finding and document review. Through the settlement negotiations, including during a full-day mediation, the parties spent significant time discussing each side's respective claims and defenses, demonstrating significant material factual disputes and differences in the interpretation of the law. Absent settlement, final adjudication of Plaintiffs' claims may take several years, as the parties would have to engage in discovery regarding Plaintiff's hours worked, elicit testimony of potential expert witnesses, file summary judgment motions, and conduct a trial. The parties have thus entered into the Agreement to avoid the necessity, expense, inconvenience, and uncertainty of litigation.

There is no risk of fraud and collusion because the parties' respective counsel have been in settlement negotiations for almost fifteen months. In fact, the Parties entered into a tolling agreement effective October 7, 2022, so that they could effectively discuss settlement. The Parties hired mediator Frank Ray to mediate their dispute on March 7, 2023. When the mediation failed, Defendant terminated the tolling agreement and the Parties began to engage in written discovery. In the meantime, they continued to discuss settlement in good faith.[3]

Plaintiffs pursuing their overtime claims will be very time consuming and costly given that multiple depositions will be needed to demonstrate when the 20-minute breaks actually began (e.g., from the time they left their designated work space or from the time they entered the breakroom) and what policies and procedures were in place for the Plaintiffs to be able to take rest breaks (e.g., to go to the restroom, make a phone call, etc…) *in addition* to the purported 20-minute meal periods. Since the breaks were automatically deducted and Defendant claims that Plaintiffs in fact, took more than 20-minutes for their breaks, Plaintiffs may need to rely on witness testimony, surveillance video, and other forms of evidence to prevail.

Accordingly, in light of the contested factual and legal issues involved, the expense and time necessary to prosecute the action through trial, the risks and costs of further prosecution of the action, the uncertainties of complex litigation, and the benefits to be received pursuant to the Agreement, the Agreement is fair, reasonable, and in the best interests of the respective parties and the Court should therefore approve it.

## III. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

---

[3] The Plaintiffs filed their lawsuit as a class and collective action. The Parties engaged in settlement discussions for both the collective and class action, and, in the alternative, settlement of the individual Plaintiffs' claims only. The Parties agreed to resolve the individual Plaintiffs' claims only.

"The FLSA provides for award of reasonable attorney fees and costs in addition to any judgment awarded to the plaintiff." Morse v. Complete Wiring Concepts, LLC, 2018 U.S. Dist. LEXIS 105839 (citing 29 U.S.C. § 216(b)). In an individual FLSA action, such as here, where the parties settled on the fee through negotiation, there is a greater range of reasonableness for approving attorney's fees. See Ali v. Piron, LLC, 2019 U.S. Dist. LEXIS 63229 (E.D. Mich. 2019) (internal citations omitted). Further, "[a] reasonable fee is one that is adequate to attract competent counsel, but … [does] not produce windfalls to attorneys." Batista v. Tremont Enters., 2019 U.S. Dist. LEXIS 121658.

Here, the request for attorneys' fees is reasonable under the circumstances. Plaintiffs agreed with their attorneys to pay them an attorneys' fees amount equal to the greater of the following amounts: (1) forty percent (40.00%) of the gross settlement or judgment received by Plaintiffs; or, (2) the amount of attorneys' fees paid based upon a fee-shifting statute (e.g., FLSA). (Declaration of Bradley L. Gibson, ¶6 ("Dec. Gibson, ¶__")).[4]

The amount of attorneys' fees requested is reasonable because it is an amount less than the actual lodestar amount. "[T]he lodestar method yields a fee that is presumptively sufficient to achieve th[e] [FLSA's] objective" of attracting competent legal counsel. Rembert v. A Plus Home Health Care Agency LLC, 986 F.3d 613, 616 (6th Cir. 2021) (quoting Perdue v. Kenny A., 559 U.S. 542, 552, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010)). The lodestar is calculated by first determining the reasonable hourly rate of counsel and the numbers of hours that counsel reasonably expended on the case, and then multiplying those amounts together. Id.

In this case, the lodestar amount is $50,680. (Dec. Gibson, ¶8). That amount was calculated by multiplying Plaintiffs' reasonable hourly rate of $350.00[5] and the reasonable number of total

---

[4] Attached hereto as Exhibit B is the Declaration of Bradley L. Gibson
[5] That hourly rate is reasonable given, among other reasons, this Court has approved the rate for attorneys with the same or lesser experience than me. See, e.g., Funk v. Airstream, Inc., 2019 WL 4599816 (S.D. Ohio, Sep. 23, 2019) (J. Rice) (approving hourly rate of $350 for Matthew Coffman, who has same years of experience as Bradley Gibson and focus on wage-and-hour litigation).

hours their counsel spent on this case of 144.8. (Id.). The requested amount of attorneys' fees is reasonable given it is less than the lodestar, even though the amount is more than 40% of the total settlement amount. See id. (recognizing the district court abused its discretion in reducing the attorneys' fees award from the lodestar amount to a percentage of the award amount partly because, "[i]f courts in these cases [e.g., FLSA] capped the awardable fees at some percentage of that monetary value, … many workers with valid FLSA claims—the nurse who was underpaid $1,500, the laborer underpaid $900—would be unable to 'attract competent counsel' to represent them."); See also Smyers v. Ohio Mulch Supply Inc., No. 21-3008, 2021 U.S. App. LEXIS 19634, *6 (6th Cir. Jul. 1, 2021) (reiterating that fees awardable under the FLSA should not be limited to a percentage of the plaintiff's recovery).

## IV.　CONCLUSION

For all of the above reasons, the parties respectfully request that the Court approve the parties' executed Agreement and enter the proposed order dismissing the Plaintiffs' action in its entirety, with prejudice.

Respectfully submitted,

/s/ Angela J. Gibson
Bradley L. Gibson (0085196)
Angela J. Gibson (0080928)
GIBSON LAW, LLC
9200 Montgomery Road, Suite 11A
Cincinnati, OH 45242
brad@gibsonemploymentlaw.com
angela@gibsonemploymentlaw.com
513.834.8254 (T)
513.834.8253 (F)

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Angela J. Gibson
Angela J. Gibson (0080928)
