UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| CHRISTINE LEWIS, *et al.*, : | |
| : | |
| Plaintiffs, : | Case No. 3:22-cv-141 |
| : | |
| v. : | Judge Thomas M. Rose |
| : | |
| OLD SOUL'S FARMS, LLC, : | Magistrate Judge Peter B. Silvain, Jr. |
| : | |
| Defendant. : | |
| : | |

---

**ENTRY AND ORDER GRANTING SECOND JOINT MOTION FOR APPROVAL OF PARTIES' SETTLEMENT AGREEMENT (DOC. NO. 23)**

---

Presently before the Court is the Parties' Second Joint Motion for Approval of Parties' Settlement Agreement (the "Second Motion") (Doc. No. 23). Plaintiffs Christine Lewis, Phillip Lewis, and Camden Lewis (collectively, "Plaintiffs") brought this action against Defendant Old Soul's Farms, LLC ("Defendant") alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and Ohio state law.[1] (Doc. No. 1.) The Parties first proposed settlement of Plaintiffs' individual claims in their Joint Motion for Approval of Parties' Settlement Agreement (the "First Motion"). (Doc. No. 17.) However, the Court denied the Second Motion without prejudice in its Entry and Order Denying, Without Prejudice, Joint Motion for Approval of Parties' Settlement Agreement (the "Order"). (Doc. No. 19.) The Parties now submit for approval a proposed settlement agreement amended pursuant to the Court's Order (the "Amended Settlement") (Doc. No. 23-1), as an attachment to the Second Motion.

---

[1] In the original Complaint, Christine Lewis brought an individual claim for workers compensation retaliation pursuant to Ohio Rev. Code § 4123.90. (Doc. No. 1 at PageID 2.) However, the Court granted Plaintiffs leave to file an Amended Complaint (Doc. No. 14) and Christine Lewis voluntarily dismissed her individual claim for retaliation in violation of Ohio Rev. Code § 4123.90. (Doc. No. 15.)

1

For the reasons set forth below, the Court **GRANTS** the Parties' Second Joint Motion for Approval of Parties' Settlement Agreement (Doc. No. 23) and **APPROVES** the Amended Settlement (Doc No. 23-1).

## I. BACKGROUND

On May 25, 2022, Plaintiffs, on behalf of themselves and all others similarly situated, filed their Class and Collective Action Complaint against Defendant. (Doc. No. 1.) Plaintiffs, likewise on behalf of themselves and all others similarly situated, subsequently filed their Amended Class and Collective Action Complaint (the "Amended Complaint") against Defendant. (Doc. No. 15.) In sum, Plaintiffs allege that Defendant denied its hourly employees uninterrupted meal breaks during shifts but "deducted one to two 20-minute breaks from the daily hours worked by" Plaintiffs and other hourly employees nonetheless. (Doc. No. 15 at PageID 90.) As a result, Plaintiffs allegedly worked more than forty hours per week and Defendant failed to compensate them accordingly. (*Id.*) Defendant filed an Answer in response to the Amended Complaint, denying these allegations, asserting several affirmative defenses, and maintaining that Plaintiffs and the individuals they purported to represent were properly compensated at all times. (Doc. No. 16.)

Despite instituting this action on behalf of themselves and all others similarly situated, Plaintiffs never moved for conditional certification of the alleged class or for court-facilitated notice to other similarly situated employees. Instead, on October 2, 2023, the Parties filed the First Motion proposing settlement of Plaintiffs' individual claims under the FLSA and Ohio state law. (Doc. No. 17.) The settlement proposed in the First Motion, would have required that Defendant—without admission of liability—pay a sum of $36,219.00 to Plaintiffs and their attorneys as follows: Christine Lewis would receive one payment of $2,500.00 representing back wages and one payment of $2,500.00 representing liquidated damages; Phillip Lewis would receive one

payment of $2,500.00 representing back wages and one payment of $2,500.00 representing liquidated damages; Camden Lewis would receive one payment of $2,500.00 representing back wages and one payment of $2,500.00 representing liquidated damages; and, Gibson Law, LLC, Plaintiffs' counsel, would receive one payment of $21,219.00 representing attorneys' fees in the amount of $18,760.97 and litigation expenses in the amount of $2,458.03. (Doc. No. 17-1 at PageID 130-131.)

In return, the settlement proposed in the First Motion would subject Plaintiffs to a mutual confidentiality provision and a broad release from liability provision. (*Id.* at PageID 131-32.) The Court then denied the First Motion, reasoning that the inclusion of such provisions did not facilitate a fair and reasonable resolution of this case. (Doc. No. 19 at PageID 155-57, 158-60.)

On December 4, 2023, the Parties filed the Second Motion and the Amended Settlement purportedly in accordance with the Court's Order. (Doc. Nos. 23; 23-1.) The Amended Settlement again proposes the stipulation that Defendant will—without admission of liability—pay a sum of $36,219.00 to Plaintiffs and their attorneys. (Doc. No. 23-1 at PageID 186.) The new accounting provided in the Amended Settlement would distribute the proposed settlement funds as follows:

> (a) The Company will issue one payroll check made payable to "Christine Lewis" in the total gross amount of $2,500.00, less appropriate taxes and other legal withholdings reported on IRS Form W-2, which shall be allocated as follows: (i) $1,250.00, less appropriate taxes and other legal withholdings, for alleged unpaid overtime in consideration for Christine Lewis' release of her Wage and Hour Claims; and (ii) $1,250.00, less appropriate taxes and other legal withholdings, for alleged economic damages in consideration for Christine Lewis' release of all other claims set forth in Paragraph 4, including but not limited to Christine Lewis' OSHA Claims.
>
> (b) The Company will issue one non-payroll check made payable to "Christine Lewis" in the total gross amount of $2,500.00, reported on IRS Form 1099, which shall be allocated as follows: (i) $1,250.00, for alleged liquidated damages in consideration for Christine Lewis' release of her Wage and Hour Claims; and (ii) $1,250.00, for alleged non-economic damages in consideration for Christine Lewis'

3

release of all other claims set forth in Paragraph 4, including but not limited to Christine Lewis' OSHA Claims.

(c) The Company will issue one payroll check made payable to "Phillip Lewis" in the total gross amount of $2,500.00, less appropriate taxes and other legal withholdings, reported on IRS Form W-2, which shall be allocated as follows: (i) $1,250.00, less appropriate taxes and other legal withholdings, for alleged unpaid overtime in In return for these payments, the Proposed Settlement would require the following release consideration for Phillip Lewis' release of his Wage and Hour Claims; and (ii) $1,250.00, less appropriate taxes and other legal withholdings, for alleged economic damages in consideration for Phillip Lewis' release of all other claims set forth in Paragraph 4, including but not limited to Phillip Lewis' OSHA Claims.

(d) The Company will issue one non-payroll check made payable to "Phillip Lewis" in the total gross amount of $2,500.00, reported on IRS Form 1099, which shall be allocated as follows: (i) $1,250.00, for alleged liquidated damages in consideration for Phillip Lewis' release of his Wage and Hour Claims; and (ii) $1,250.00, for alleged noneconomic damages in consideration for Phillip Lewis' release of all other claims set forth in Paragraph 4, including but not limited to Phillip Lewis' OSHA Claims.

(e) The Company will issue one payroll check made payable to "Camden Lewis" in the total gross amount of $2,500.00, less appropriate taxes and other legal withholdings, reported on IRS Form W-2, which shall be allocated as follows: (i) $1,5000.00, less appropriate taxes and other legal withholdings, for alleged unpaid overtime in consideration for Camden Lewis' release of his Wage and Hour Claims; and (ii) $1,000.00, less appropriate taxes and other legal withholdings, for alleged economic damages in consideration for Camden Lewis' release of all other claims set forth in Paragraph 4.

(f) The Company will issue one non-payroll check made payable to "Camden Lewis" in the total gross amount of $2,500.00, for non-economic and/or liquidated damages, reported on IRS Form 1099, which shall be allocated as follows: (i) $1,500.00, for alleged liquidated damages in consideration for Camden Lewis' release of his Wage and Hour Claims; and (ii) $1,000.00, for alleged non-economic damages in consideration for Camden Lewis' release of all other claims set forth in Paragraph 4.

(g) The Company will issue one non-payroll check made payable to "Gibson Law, LLC" in the amount of $21,219.00, which represents litigation expenses in the amount of $2,458.03 and attorneys' fees in the amount of $18,760.97, reported on IRS Form 1099.

(*Id.* at PageID 186-87.)

For their part, the Plaintiffs will again be subject to a broad release from liability provision under the Amended Settlement, which provides:

> 4. <u>Release</u>. In consideration for the benefits set forth in this Agreement, Employees, for themselves and their dependents, heirs, beneficiaries, successors, assigns, executors, agents, administrators, and representatives of every kind, fully and forever waive, release, surrender, acquit, and discharge the Company, including its current and former directors, officers, administrators, owners, shareholders, agents, attorneys, employees, managers, supervisors, representatives, insurers, predecessors, divisions, parents, sister companies, affiliates, subsidiaries, successors, and assigns (collectively, the "Released Parties") from any and all of their rights, injuries, actions, demands, sums of money, liabilities, damages, losses, charges, complaints, causes of action, interests, claims and costs (including attorneys' fees) of any nature whatsoever, in law or in equity, whether known or unknown, disputed or undisputed, arising out of, under, or by reason of any matter whatsoever from the beginning of time through and including the date that they execute this Agreement, including, without limitation, any claims or rights asserted or arising out of or in connection with Employees' employment by the Company and/or Employees' separation of employment and any claims, causes of action, allegations, or other rights associated with the Lawsuit, any claim of express or implied contract or promissory estoppel, wrongful termination, retaliation, harassment, discrimination, intentional infliction of emotional distress, or other common law torts, any violation of a specific safety requirement, or pursuant to any federal, state, or local employment laws, regulations, executive orders, or other requirements, including without limitation, any and all applicable Ohio employment laws, including but not limited to Chapters 4111, 4112, 4113, 4121, 4123, and 4141 of the Ohio Revised Code, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Family and Medical Leave Act of 1993, the Employment Retirement Income Security Act of 1974, the Rehabilitation Act of 1973, the Older Workers Benefit Protection Act, the Americans with Disabilities Act of 1990, the Civil Rights Act of 1991, and the Age Discrimination in Employment Act, as they may be amended (collectively, "Claims"). Employees further represent and warrant that they have not suffered any injuries during the course and scope of their employment at the Company and that they are not owed any wages, accrued vacation pay, commissions, or bonuses from the Company. The only exception to this Section is that Christine Lewis's workers' compensation claim, Bureau of Workers' Compensation Claim No. 21-195735, is not settled or closed as a result of this Agreement. In consideration of the benefits that Employees will receive under this Agreement, Employees hereby release, waive, and discharge any and all such Claims against the Released Parties, and Employees hereby agree that neither they nor any of their heirs or personal representatives will ever sue or assert in any forum any such Claims. Employees acknowledge that this Agreement includes terms and provisions setting forth certain benefits and/or rights to which they are not otherwise entitled. Employees acknowledge and agree that this release pertains to all Claims up to and including the date that they execute this Agreement.

(Doc. No. 23-1 at PageID 187-88.) However, in contrast with the Parties' first proposed settlement, the Amended Settlement does not include a mutual confidentiality provision.

Through the Second Motion, the Parties ask the Court to approve the Amended Settlement as "adequate, fair, and reasonable." (Doc. No. 23 at PageID 171.)

## II. LEGAL STANDARDS FOR ASSESSING A PROPOSED SETTLEMENT OF AN FLSA ACTION

The principal purpose of the FLSA is to protect all covered workers against "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being." 29 U.S.C. § 202(a). This includes protecting such workers "from substandard wages and oppressive working hours" so that each "receive[s] a fair day's pay for a fair day's work." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (internal quotation marks omitted). Further, "[t]he FLSA's overtime compensation provisions are 'mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified by contract or settlement.'" *O'Bryant v. ABC Phones of North Carolina, Inc.*, No. 2:19-cv-2378, 2020 U.S. Dist. LEXIS 138599, at *18, 2020 WL 4493157, at *6 (W.D. Tenn. Aug. 4, 2020) (quoting *Kritzer v. Safelife Sols., LLC*, No. 2:10-cv-729, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012)).

However, there are two narrow circumstances in which FLSA claims for back wages may be compromised. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. CV 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *11, 2008 WL 4724499, at *2-3 (E.D. Ky. Oct. 23, 2008). The first exception involves FLSA claims that are supervised by the Secretary of Labor pursuant to 29 U.S.C. § 216(c). *Lynn's Food Stores*, 679 F.2d at 1353. The second exception provides that "a stipulated judgment [may be] entered by a

6

court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355. "Although the Sixth Circuit has never definitively answered the question of whether court approval is required for FLSA settlement agreements, district courts in our Circuit regularly find that the FLSA context counsels in favor of courts approving settlements." *Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960, 964-65 (E.D. Mich. 2021) (collecting cases); *see also Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026 (8th Cir. 2019) (acknowledging a circuit split regarding whether Supreme Court precedent requires "judicial approval of *all* FLSA settlements") (emphasis in original).

Therefore, in reviewing a settlement proposed by the parties in a suit brought by employees under the FLSA against their employer, a district court must determine whether the proposed settlement represents a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*, 679 F.2d at 1355; *Athan*, 523 F. Supp. 3d at 965 ("[b]efore this Court can approve the settlement of Plaintiff's FLSA claim, the Court must determine that the parties were engaged in a bona fide dispute and that the settlement is a fair and reasonable compromise of the issues presented") (internal quotation marks omitted). When determining whether a proposed settlement is fair and reasonable, courts look to circumstantial factors – described in greater detail below – as well as any inclusion of a confidentiality provision and the reasonableness of proposed attorneys' fees. *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016) (totality of the circumstances); *Smith v. SAC Wireless, LLC*, No 20-10932, 2022 U.S. Dist. LEXIS 96760, at *5-6, 2022 WL 1744785, at *2 (E.D. Mich. May 31, 2022) (confidentiality and attorneys' fees). If found to be reasonable, then the court may approve the settlement to "promote the policy of

7

encouraging settlement of litigation." *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *30 2008 WL 4724499, at *9 (quoting *Lynn's Food Stores*, 679 F.2d at 1353).

### III. ANALYSIS

As an initial matter, the Court sees no need to reiterate the majority of its analysis relating to the First Motion.[2] In its Order, the Court previously found that the present case constitutes a bona fide dispute. (Doc. No. 19 at PageID 150-51.) When determining whether the First Motion proposed a fair and reasonable settlement, the Court found that five of six considered factors[3] were satisfied. (*Id.* at PageID 151-58.) Further, the Court found the attorneys' fees and expenses proposed in the First Motion to be reasonable. (*Id.* at PageID 160-61.) These elements of the Parties' first proposed settlement are substantively unchanged by the Second Motion and the Amended Settlement. Therefore, the Court will forego an otherwise redundant analysis of such elements here.

On the First Motion, the Court only took issue with two aspects of the Parties' first proposed settlement. First, the Court found that the scope of the settlement's release from liability provision was overbroad relative to the settlement disbursements proposed. (*Id.* at PageID 155-57.) Second, the Court determined that the Parties' proposed mutual confidentiality provision was unnecessary and unwarranted in this case. (*Id.* at PageID 158-60.)

Presently, the Parties' Second Motion proposes the Amended Settlement with changes made pursuant to the Court's Order. The Amended Settlement does not contain any mention of mutual confidentiality. As such, the Court will find this issue sufficiently cured by the Amended

---

[2] For a detailed analysis, *see* Doc. No. 19 at PageID 149-61.
[3] (1) Plaintiffs' range of possible recovery; (2) the stage of the proceedings and the amount of discovery completed; (3) the seriousness of the litigation risks faced by the Parties; (4) the scope of any release provision in the Proposed Settlement; (5) the experience and views of counsel and the opinion of Plaintiffs; and (6) the possibility of fraud or collusion. *Selk*, 159 F. Supp. 3d at 1173.

Settlement. The Amended Settlement does still contain a broad release from liability provision. (Doc. No. 23-1 at PageID 187-88.) However, the Parties submit an amended disbursement framework for the proposed settlement proceeds here to accommodate a broad release from liability. (*Id.* at PageID 186-87.) In particular, the Parties contend that the Amended Settlement accounts for its broad release from liability provision by awarding Plaintiffs independent consideration for the release. (*Id.* at PageID 187.)

Based on the Court's prior analysis and the Parties' removal of mutual confidentiality from the Amended Settlement, the Court now solely determines whether the Amended Settlement is fair and reasonable with the inclusion of a broad release from liability provision. "A settlement agreement that includes an overbroad release provision may be found unfair and unreasonable." *O'Bryant*, 2020 U.S. Dist. LEXIS 138599, at *38-39, 2020 WL 4493157, at *14 (citing *Selk*, 159 F. Supp. 3d at 1178). The release provision in a proposed FLSA settlement agreement should generally mirror the FLSA claims being settled. *Selk*, 159 F. Supp. 3d at 1178. In short, the claims released need to "share a factual predicate with the claims pled in the complaint." *O'Bryant*, 2020 U.S. Dist. LEXIS 138599, at *39, 2020 WL 4493157, at *15 (quoting *Does 1-2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 900 (6th Cir. 2019)); *see also Baker v. ABC Phones of North Carolina, Inc.*, No. 19-cv-2378, 2020 U.S. Dist. LEXIS 240695, at *10, 2020 WL 7634780, at *11 (W.D. Tenn. Dec. 22, 2020) ("[t]he scope of the revised release is appropriate because 'the release specifically cabins the categories of relinquished claims to those based upon or reasonably related to the pleadings and claims asserted in the Settlement Agreement'") (quoting *Does 1-2*, 925 F.3d at 900).

"The concern is that an expansive release of claims would effectively allow employers to use employee wages – wages that are guaranteed by statute – as a bargaining chip to extract

9

valuable concessions from employees." *Selk*, 159 F. Supp. 3d at 1178; *see also O'Bryant*, 2020 U.S. Dist. LEXIS 138599, at *39, 2020 WL 4493157, at *14 (a court should not let an employer "use a settlement agreement to purchase a broad-based litigation shield in exchange for unpaid wages that class members are entitled to by statute") (internal quotation marks omitted).  However, "[c]ourts are less skeptical of a broad release of claims when the employee receives independent compensation from the employer as consideration for the release." *Selk*, 159 F. Supp. 3d at 1179 (approving separate release by the named plaintiff (only) where, although the release extended beyond the FLSA claims at issue to include any claim that the named plaintiff-employee may have against her defendant-employer, a separate release payment made only to the named plaintiff justified the broader release); *see also Baker*, 2020 U.S. Dist. LEXIS 240695, at *10, 2020 WL 7634780, at *12 (approving general release that applied only to the named plaintiff and not to opt-in plaintiffs).

Here, the Amended Settlement adequately provides that Plaintiffs are to receive independent compensation in exchange for a broad release from liability.  Each Plaintiff is slated to receive gross compensation in the amount of $2,500.00 in exchange for their "release of all claims set forth in [the Amended Settlement's "Release" provision]."  (Doc. No. 23-1 at PageID 186-87.)  Indeed, for good measure the Amended Settlement additionally states that "[Plaintiffs] acknowledge and agree that the [p]ayment and other benefits provided by [Defendant] under this Agreement constitute independent and sufficient consideration for their release of claims, set forth in Paragraph 4 of this Agreement." (*Id.* at PageID 187.)  Plaintiffs are unmistakably receiving independent compensation for potential claims not subject to this action.

Hence, this factor militates in favor of finding the Amended Settlement to be fair and reasonable.  Moreover, with all other elements of the Amended Settlement found to be adequate,

10

the Court finds that the Amended Settlement reflects a fair and reasonable resolution of the instant case.

IV. **CONCLUSION**

For the reasons stated above, the Court **GRANTS** the Second Joint Motion for Approval of Parties' Settlement Agreement (Doc. No. 23) and **APPROVES** the Amended Settlement (Doc No. 23-1).

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, December 7, 2023.

                                                        s/Thomas M. Rose
                                                      THOMAS M. ROSE
                                      UNITED STATES DISTRICT JUDGE